UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cr-00011-JPH-DML |
| | ) | |
| DEJUAN LOVE | ) | |
| a/k/a DUJUAN LOVE, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION TO SUPPRESS**

Dejuan Love is charged with possession of methamphetamine with intent to distribute. Dkt. 60. He has filed a motion to suppress the evidence that was seized at the time of his arrest. He argues that the police did not have probable cause to conduct a traffic stop and, even if they did, the ensuing inventory search violated the Fourth Amendment. Dkt. [87]; dkt. 88. For the reasons below, the motion is **DENIED**.

**I.
Facts and Background**

As explained below, Mr. Love does not meaningfully challenge Officer Megara's police report. See *United States v. Edgeworth*, 889 F.3d 350, 353–54 (7th Cir. 2018). The Court therefore recites the undisputed facts from that report. See *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007).

On September 22, 2017, Indianapolis Metropolitan Police Department ("IMPD") Officer Kenneth Megara saw a vehicle driven by Dejuan Love swerve over the double-yellow line on Arlington Avenue in Indianapolis. Dkt. 91-1 at

3. Officer Megara ran the vehicle's license plate number and observed Mr. Love fail to stop at a stop sign. *Id.*

Shortly afterwards, Mr. Love stopped in the driveway of a residence. *Id.* Officer Megara stopped and watched a person who was later identified as John Rose come out of the house, talk to Mr. Love, and then return to the house. *Id.* at 4. Once back in the house, Mr. Rose waved at Officer Megara from a window and pointed at Mr. Love's vehicle. *Id.*

Officer Megara activated his lights and sirens and approached Mr. Love's vehicle. *Id.* While Officer Megara approached, Mr. Love—who has no use of his legs—got out of the car and sat down in a wheelchair by the car. *Id.*

Officer Megara ran Mr. Love's Indiana identification card and learned that Mr. Love's driver's license was suspended. *Id.* at 4. Mr. Love was placed under arrest for driving with a suspended license. *Id.*

As Officer Megara approached the vehicle to do an inventory search, he saw a black trash bag on the ground behind the driver's side front tire. *Id.* Officer Megara opened the trash bag and found a gray safe inside. *Id.* During an inventory search of the car, he found a key that looked like it could be used to open the safe. *Id.* Officer Megara used the key to unlock the safe and found a package of methamphetamine inside. *Id.*

After being read the Miranda warnings, Mr. Love said that he received the trash bag earlier in the day from a friend and that he put it under the car before Officer Megara approached. *Id.*

Mr. Love is charged with possession of the methamphetamine that was found in the safe. Dkt. 60. He filed this motion to suppress, arguing that the search and seizure violated the Fourth Amendment. *See* dkt. 88.

## II.
## The Exclusionary Rule

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. To "compel respect" for this constitutional guarantee, the Supreme Court fashioned the exclusionary rule. *United States v. Martin*, 807 F.3d 842, 846 (7th Cir. 2015) (citing *Davis v. United States*, 564 U.S. 229 (2011)). The exclusionary rule "often requires trial courts to exclude unlawfully seized evidence in a criminal trial" and is "the principal judicial remedy to deter Fourth Amendment violations." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016).

However, the rule "exacts a heavy toll on both the judicial system and society at large" because its effect "is to suppress the truth and set the criminal loose in the community without punishment." *Martin*, 807 F.3d at 846 (quoting *Davis*, 564 U.S. at 237). So the rule applies only when "its deterrence benefits outweigh its substantial social costs." *Strieff*, 136 S. Ct. at 2061. Suppression is the "last resort" rather than the "first impulse." *Id.*

## III.
## Discussion

Mr. Love argues that there's an issue of fact as to whether Officer Megara had probable cause for the traffic stop, and that the search of his vehicle

3

violated the Fourth Amendment.[1]  Dkt. 88 at 4–6.  The government responds that under the undisputed facts, the vehicle search was reasonable.  Dkt. 91 at 7–8.

### A. Mr. Love has not shown any disputed issues of material fact.

Mr. Love argues that there is a factual dispute as to whether Officer Megara witnessed the traffic violations:

> A fact issue exists as to whether Officer M[e]gara witnessed the traffic infractions claimed, justifying the ensuing events as a routine traffic stop. After all, the claimed traffic violations did not result in a traffic stop. Officer M[e]gara allowed some period of time to elapse after Love parked the automobile in a private drive while he observed subsequent events.

Dkt. 88 at 5.  The government responds that Mr. Love's argument lacks evidence.  Dkt. 91 at 4.

To show a fact dispute, Mr. Love must provide "definite, specific, detailed, and nonconjectural" allegations.  *United States v. Edgeworth*, 889 F.3d 350, 354 (7th Cir. 2018).  But he has identified no "specific" disputed facts.  *See id.*  And he does not explain how the question of whether Officer Megara saw the traffic violations affects the reasonableness of the vehicle search.  *See United States v. McGaughty*, 485 F.3d 965, 969 (7th Cir. 2007) (emphasizing "the necessity of materiality in any factual disputes").

---

[1] Mr. Love says in passing that the search of the locked box was unreasonable, but provides no supporting analysis.  Dkt. 88 at 5.  In context, he argues only that the evidence found in the locked box must be suppressed as fruit of an unlawful vehicle search.  *Id.* at 10.  The Court therefore does not address the constitutionality of Officer Megara opening the locked box, or whether Mr. Love has standing to challenge that opening.  *See United States v. Kelly*, 772 F.3d 1072, 1078–79 (7th Cir. 2014).

In short, Mr. Love has made only conclusory statements, which are not able to show a disputed issue of material fact. See *Edgeworth*, 889 F.3d at 354 ("Reliance on vague, conclusory allegations is insufficient."). The Court therefore considers the undisputed facts from Officer Megara's report in evaluating the reasonableness of the vehicle search.[2]

### B. The vehicle search was a reasonable inventory search.

Mr. Love next argues that even if the traffic stop were justified, the search of his vehicle was not. Dkt. 88 at 5. He contends that the government's argument is an "after-the-fact justification" for an unlawful search. Dkt. 88 at 5–6. The government argues that its search of Mr. Love's vehicle was a proper inventory search. Dkt. 91 at 7.

Proper inventory searches "are reasonable under the Fourth Amendment." *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010) (citing *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976)). "An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *Id.* at 614. "Both the decision to take the car into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment." *Id.*

---

[2] For the same reasons, no evidentiary hearing is required. See *Edgeworth*, 889 F.3d at 353 ("District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion.").

Mr. Love's only challenge to the vehicle search is that IMPD did not follow its established inventory-search procedures. Dkt. 88 at 7–10. The government responds that Mr. Love has not presented any evidence to support that argument. Dkt. 91 at 7.

IMPD general order 7.3 allows officers to tow a vehicle "when authorized by city ordinance or state statute, or as part of the officers' community caretaking function." IMPD General Order 7.3, City of Indianapolis, https://citybase-cms-prod.s3.amazonaws.com/f39f547560cc4bf39df4d 527495c9231.pdf at 424 (June 29, 2016). Indianapolis City Ordinance 611-204 allows an officer to impound "a vehicle constituting a public nuisance," and Ordinance 611-203 defines a public nuisance as including "any vehicle the operator of which is unable to move such vehicle by reason of his or her incapacity from injury or arrest."

Here, it's uncontested that Mr. Love was the operator of the vehicle and had been arrested. *See* dkt. 88 at 1–3. General Order 7.3 therefore authorized the towing of his vehicle as well as the accompanying inventory search. *See Cartwright,* 630 F.3d at 614–15. And indeed, this was one of the two reasons Officer Megara gave for towing Mr. Love's vehicle. Dkt. 91-1 at 5 ("The vehicle was towed due to Dujuan Love being arrested and the vehicle was blocking [the resident's] driveway.").

Mr. Love also cites General Order 7.3's bar on inventory searches motivated by an officer's desire to uncover evidence. Dkt. 88 at 9. He alleges that finding evidence "appears to be the driving force" behind this inventory

6

search because Officer Megara did not stop Mr. Love as soon as he could have. *Id.* But Mr. Love cites no evidence that Officer Megara delayed in order to increase the odds of finding evidence. And the inventory search was conducted after Mr. Love was arrested for driving with a suspended license, which, as explained above, allowed the officers to tow the vehicle under IMPD policy. Once the officers decided to tow the vehicle, an inventory search was required. General Order 7.3 ("Whenever an officer takes a vehicle into custody, an inventory search will be conducted prior to impoundment . . . ."). The inventory search here therefore followed "routine . . . established inventory procedures" as required for a lawful search. *Cartwright*, 630 F.3d at 614.

Mr. Love raises two final arguments in response. First, that allowing an inventory search here would undermine *Arizona v. Gant,* 556 U.S. 332 (2009), which limits vehicle searches conducted incident to arrest. Dkt. 88 at 5–6. This argument falters because the search incident to arrest in *Gant* was conducted "solely for the purpose of gathering evidence," *Riley v. California,* 573 U.S. 373, 398 (2014), while inventory searches are "aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property," *United States v. Cherry,* 436 F.3d 769, 772 (7th Cir. 2006). Mr. Love cites no authority for extending *Gant* into inventory searches, and doing so would be incompatible with the justifications underlying the different types of searches. *See United States v. Paige,* 870 F.3d 693, 702 n.23 (7th Cir. 2017).

7

Second, Mr. Love argues that police should not have towed the vehicle because Nicole Clanton, whom Mr. Love called and asked to come to where he was, was there and available to take the car. *Id.* at 3–4, 10. But even if the Court accepted Mr. Love's proffer that Ms. Clanton was available and licensed to drive the car, Mr. Love cites no policy requiring officers to let her do so. Nor does Mr. Love cite any legal authority showing that an inventory search is unreasonable under such circumstances. See *Cartwright,* 630 F.3d at 615 ("The Fourth Amendment does not require that the police offer these sorts of alternatives to impoundment."). The search was therefore a reasonable inventory search conducted under IMPD policy.[3]

## IV.
## Conclusion

Mr. Love's motion to suppress is **DENIED**. Dkt. [87].

**SO ORDERED.**

Date: 8/4/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
bradley.blackington@usdoj.gov

---

[3] Because the vehicle search was reasonable, the Court does not address the government's argument that Mr. Love lacks standing to raise this claim. See *United States v. Funches,* 327 F.3d 582, 586 n.3 (7th Cir. 2003).

William H. Dazey, Jr.
INDIANA FEDERAL COMMUNITY DEFENDERS
bill.dazey@fd.org